CASE NO. 20-CV-845-G

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

KRISTA RAMIREZ,

Plaintiff,

v.

STATE OF OKLAHOMA, *ex rel.,* BOARD OF REGENTS FOR THE
REGIONAL UNIVERSITY SYSTEM OF OKLAHOMA, and SOUTHEASTERN
OKLAHOMA STATE UNIVERSITY

Defendants.

DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT

DIXIE L. COFFEY, OBA#11876
JEB E. JOSEPH, OBA#19137
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921   Facsimile: (405) 521-4518

*Attorneys for Defendants*

August 31, 2020

## <u>TABLE OF CONTENTS</u>

**TABLE OF CONTENTS** ................................................................. i

**TABLE OF AUTHORITIES** ........................................................ iii

**DEFENDANTS' MOTION TO DISMISS** ................................... 1

**INTRODUCTION** ......................................................................... 1

**STATEMENT OF THE CASE** ..................................................... 1

**STANDARD OF REVIEW** ........................................................... 2

**PROPOSITION I:**

    **PLAINTIFF FAILED TO EXHAUST REMEDIES** ................. 5

      A.  OADA claim ................................................................. 5

      B.  ADA claim .................................................................... 8

**PROPOSITION II:**

    **THE UNIVERSITY IS IMMUNE** .......................................... 9

      A.  OADA claim ................................................................. 9

      B.  FMLA claim............................................................... 10

      C.  ADA claim .................................................................. 11

**PROPOSITION III:**

    **THE LAWSUIT LACKS SUFFICIENT FACTUAL AVERMENTS**............. 12

      A.  ADA claim .................................................................. 12

      B.  FMLA ......................................................................... 13

      C.  OADA ......................................................................... 16

**CONCLUSION** ............................................................................................ 17

**CERTIFICATE OF SERVICE** ................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Alvarado v. KOBTV, L.L.C.,*
493 F.3d 1210 (10th Cir. 2007) ..................................................................... 3, 4

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................... 5, 13

*Basso v. Utah Power and Light Co.,*
495 F.2d 906 (10th Cir. 1974) ..................................................................... 2

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ..................................................................... 3, 4, 5, 13

*Bd. Of Trustees of Univ. of Ala. v. Garrett,*
531 U.S. 356 (2001) ..................................................................... 11

*Bright v. Univ. of Oklahoma Bd. of Regents,*
705 F.App'x 768 (10th Cir. 2017) ..................................................................... 11

*Bryan v. Stillwater Bd. of Realtors,*
578 F.2d 1319 (10th Cir. 1977) ..................................................................... 5

*Campbell v. Gambro Healthcare, Inc.,*
478 F.3d 1282 (10th Cir. 2007) ..................................................................... 14

*Chavez v. Thomas & Betts Corp.,*
396 F.3d 1088 (10th Cir. 2005) ..................................................................... 14

*Childers v. Bd. of Comm'rs of Oklahoma County,*
2019 WL 3069446 (W.D. Okla. July 12, 2019) ..................................................................... 7, 8

*Coleman v. Court of Appeals of Maryland,*
132 S.Ct. 1327 (2012) ..................................................................... 10

*Dalpiaz v. Carbon Cnty. Utah,*
760 F.3d 1126 (10th Cir. 2014) ..................................................................... 14

*Davis v. Board of Regents for Oklahoma State University,*
2001 OK CIV APP 65 ..................................................................... 7

*Duncan v. City of Nichols Hills,*
1996 OK 16 .......................................................................................................... 7

*Eagle Air Med Corp. v. Martin,*
2009 WL 651800 (D. Colo. Mar. 12, 2009) *aff'd* 377 F.App'x 823 (10th Cir. 2010)........ 2

*Elwell v. Oklahoma, ex rel., Bd. of Regents of Univ. of Oklahoma,*
693 F.3d 103 (10th Cir. 2012) ..................................................................... 10, 11

*Erikson v. Pawnee County Bd. of County Comm'rs,*
263 F.3d 1151 (10th Cir. 2001) ............................................................................ 4

*Ex parte State of New York No. 1,*
256 U.S. 490 (1921) ......................................................................................... 10

*Forcum v. Via Christi Health System, Inc.,*
137 P.3d 1250 (Okla. Civ. App. 2006)................................................................. 16

*Fuller v. Odom,*
1987 OK 64 ...................................................................................................... 6

*Girdner v. Bd. of Comm'rs,*
2009 OK CIV APP 94 ........................................................................................ 6

*Groundhog v. Keller,*
442 F.2d 674 (10th Cir. 1971) ............................................................................ 2

*Hall v. Bellmon,*
935 F.2d 1106 (10th Cir. 1991) ....................................................................... 4, 5

*Holt v. United States,*
46 F.3d 1000 (10th Cir. 1995) ............................................................................ 3

*Johnson v. Wal-Mart Stores E., LP,*
2017 WL 3586710 (N.D. Okla. Aug. 18, 2017).................................................... 16

*Jones v. Denver Pub. Sch.,*
472 F.3d 1215 (10th Cir. 2005) ......................................................................... 14

*Kay v. Bemis,*
500 F.3d 1214 (10th Cir. 2007) ........................................................................... 4

*Matthews v. Denver Post,*
263 F.3d 1164 (10th Cir. 2001) ...................................................................... 12

*Metzler v. Fed. Home Loan Bank of Topeka,*
464 F.3d 1164 (10th Cir. 2006) ...................................................................... 14

*Moffett v. Halliburton Energy Servs., Inc.,*
291 F.3d 1227 (10th Cir. 2002) ........................................................................ 4

*Murray v. Walgreens Co.,*
2006 WL 1049623 (W.D. Okla. Apr. 14, 2006)............................................. 14

*Oppenheim v. Sterling,*
368 F.2d 516 (10th Cir. 1996) ........................................................................... 5

*Randolph v. Oklahoma Military Department, ex rel., State of Oklahoma,*
1995 OK CIV APP 30 ......................................................................................... 7

*Ridge at red Hawk, L.L.C. v. Schneider,*
493 F.3d 1174 (10th Cir. 2007) ......................................................................... 3

*Rivero v. Bd of Rents of Univ. of New Mexico,*
950 F.3d 754 (10th Cir. 2020) ........................................................................ 12

*Robbins v. State of Okla., et al.,*
519 F.3d 1242 (10th Cir. 2008) ......................................................................... 4

*Shanbour v. Hollingsworth,*
1996 OK 67 ......................................................................................................... 7

*Shikles v. Sprint/United Mgmt. Co.,*
426 F.3d 1304 (10th Cir. 2005) ......................................................................... 9

*Stuart v. Colo. Interstate Gas Co.,*
271 F.3d 1221 (10th Cir. 2004) ....................................................................... 16

*Thuc Tran v. Sonic Indus. Servs., Inc.,*
767 F.Supp.2d 1217 (W.D. Okla. 2011, *aff'd sub nom.,*
Tran v. Sonic Indus. Servs., Inc.,*
490 F.App'x 115 (10th Cir. 2012)....................................................................... 9

*Tolbert v. Ean Servs., LLC,*
2016 WL 796096 (N.D. Okla. Feb. 26, 2016)................................................. 16

*Vanderpool v. State,*
672 P.2d 1153 (Okla. 1983) ................................................................ 5

## STATUTES

OKLA. STAT. tit. 25 § 1101 *et seq.* ...................................................... 2

OKLA. STAT. tit. 25 § 1302(A)(1) ....................................................... 16

OKLA. STAT. tit. 25 § 1301(4) ............................................................ 16

OKLA. STAT. tit. 25 § 1350(B) ............................................................ 16

OKLA. STAT. tit. 25 § 1502 .................................................................. 9

OKLA. STAT. tit. 51 § 151 *et seq.* ....................................................... 5

OKLA. STAT. tit. 51 § 152.1 ............................................................... 11

OKLA. STAT. tit. 51 § 152.2 ................................................................ 6

OKLA. STAT. tit. 51 § 153(B) ............................................................... 6

OKLA. STAT. tit. 51 § 156 .................................................................... 7

OKLA. STAT. tit. 51 § 156(E) ............................................................... 8

OKLA. STAT. tit. 51 § 157 .................................................................... 7

OKLA. STAT. tit. 51 § 157(B) ............................................................... 7

29 U.S.C. § 2601 *et seq.* ..................................................................... 2

29 U.S.C. § 2615(a)(1) ....................................................................... 14

29 C.F.R. § 825.110(a)(2) .................................................................. 13

42 U.S.C. § 12111-12117 .................................................................... 2

42 U.S.C. § 12117(A) .......................................................................... 8

42 U.S.C. § 2000e-5(e)(1) ................................................................ 8, 9

**RULES**

Fed. R. Civ. P. 8(a)(2) ............................................................................................... 4

Fed. R. Civ. P. 12(b)(1) ............................................................... 1, 2, 3, 8, 17

Fed. R. Civ. P. 12(b)(6) ........................................................ 1, 3, 4, 12, 15, 17

Fed. R. Civ. P. 56 ...................................................................................... 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) KRISTA RAMIREZ, | |
| Plaintiff, | |
| v. | **Case No.: 20-cv-845-G** |
| (1) STATE OF OKLAHOMA *ex rel.,* BOARD OF REGENTS FOR THE REGIONAL UNIVESITY SYSTEM OF OKLAHOMA, and (2) SOUTHEASTERN OKLAHOMA STATE UNIVERSITY, | **(Removed from the Oklahoma County District Court Case No.: CJ-2020-3455)** |
| Defendants. | |

### DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendants, State of Oklahoma, *ex rel.,* Board of Regents for the Regional University System of Oklahoma ("RUSO"), and Southeastern Oklahoma State University ("SEOSU"), (collectively "University Defendants" or "the State"), and pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) move this Court for an order dismissing Plaintiff's Complaint. [Doc. 1-2]. In support hereof, University Defendants submit the following brief:

### INTRODUCTION

Plaintiff originally filed[1] this case on July 28, 2020, in the District Court of Oklahoma County, State of Oklahoma, as *Krista Ramirez v. Board of Regents for the Regional University System of Oklahoma and Southeastern Oklahoma State University,* Case No. CJ-2020-3455, alleging violations of the Americans with Disabilities Act

---

[1] Plaintiff's initiating document filed in Oklahoma County was denominated "Petition." Consistent with Federal nomenclature, that document will be referred to herein as the "Complaint" or "Lawsuit."

("ADA") 42 U.S.C. §§ 12111-12117, the Oklahoma Anti-Discrimination Act ("OADA") OKLA. STAT. tit. 25 §1101 *et. seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601 *et. seq.* RUSO and SEOSU deny Plaintiff received unfair or unlawful treatment. Plaintiff was terminated for legitimate, non-discriminatory reasons.

## STATEMENT OF THE CASE

Failing to offer any enumerated counts or claims, the Complaint makes three (3) general assertions against two (2) separate Defendants, RUSO and SEOSU: (a) that Plaintiff's rights under the ADA were violated; (b) that Plaintiff's rights under the OADA were violated; and (c) that Plaintiffs rights under the FMLA were violated. As shown below, Plaintiff's Complaint fails to meet the pleading requirements to maintain viable claims against Defendants. Plaintiff's Lawsuit should be dismissed.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keller*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power and Light Co.*, 495 F.2d 906, 909 (10th Cir.1974), and *Eagle Air Med Corp. v. Martin*, No. CIV.A. 08-CV-00532LT, 2009 WL 651800 (D. Colo. Mar. 12, 2009) aff'd, 377 F. App'x 823 (10th Cir. 2010).

Rule 12(b)(1) motions generally take one of two forms. First, a moving party may make a facial attack on the complaint's allegations as to the existence of subject matter

jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). In reviewing the facial attack, the district court must accept the allegations in the complaint as true. *Id*. Second, a party may go beyond the allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Id*. at 1003. The court has wide discretion to allow evidence outside the pleadings and the court's reference to such evidence does not convert the motion into a Rule 56 motion. *Id*. A court is required to convert a Rule 12(b)(1) motion into a Rule 56 motion when resolution of the jurisdictional question is intertwined with the merits of the case. *Holt*, 46 F.3d at 1003. Here, resolution of the jurisdictional question, discussed hereinafter, is not intertwined with the merits.

Fed. R. Civ. P. (12)(b)(6) empowers a court to dismiss a complaint for failure to state claims upon which relief may be granted. Motions to dismiss are properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and those factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 1965, 1974 (citations omitted). The Supreme Court's standard for 12(b)(6) dismissal is "whether the complaint contains 'enough facts to state a claim that is plausible on its face.'" *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007)). The court should "look for plausibility in th[e] complaint." *Alvarado v. KOBTV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Bell Atl.*, 127 S.Ct. at 1974). The specific allegations in the complaint must be

reviewed "to determine whether they plausibly support a legal claim for relief." *Id*. at 1215, n.2; *see also Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Entitlement to relief requires more than just "labels and conclusions or a formulaic recitation of the elements" to state a cause of action. *Robbins v. State of Okla*., *et al.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl*., 127 S.Ct. at 1965). In deciding a 12(b)(6) motion, a court must accept all the well-pleaded allegations of the complaint as true, and must construe the allegations in the light most favorable to the claimant. *Id*. at 1965; *Alvarado* at. 1215; *Moffett v. Halliburton Energy Servs., Inc*., 291 F.3d 1227, 1231 (10th Cir. 2002).

However, the court must also ensure that each defendant has adequate notice as to the facts and allegations entitling Plaintiff to the requested relief. *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief"); *Bell Atlantic, supra*. In this regard, it is important "that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against . . . her, as distinguished from collective allegations against the [defendants as a group]." *Robbins* at 1250 (citation omitted) (emphasis in original).

A court is not required to accept as true allegations that are conclusory in nature. *Erikson v. Pawnee County Bd. of County Comm'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991). Similarly, "in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual

~ 4 ~

contentions, not h[er] conclusory allegations." *Id. See also Bryan v. Stillwater Bd. of Realtors*, 578 F.2d 1319, 1321 (10th Cir. 1977) ("allegations of conclusions or opinions are not sufficient when no facts are alleged by way of the statement of the claim."); *Oppenheim v. Sterling*, 368 F.2d 516, 519 (10th Cir. 1966) ("unsupported conclusions of the pleader may be disregarded"). As the Supreme Court put it:

> Two working principles underlie *Twombly*. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Id*., at 555, 127 S.Ct. 1955. Second, determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense. *Id*., at 556, 127 S.Ct. 1955. A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1940 (2009). Further, "[a]lthough decided within an antitrust context, *Twombly* 'expounded the pleading standard for all civil actions.'" *Id*. at 683.

## I.    PLAINTIFF FAILED TO EXHAUST REMEMDIES.

### a. OADA claim

Plaintiff fails to allege compliance with the Oklahoma Governmental Tort Claims Act ("GTCA"). (OKLA. STAT. tit. 51 § 151 *et seq.*) This is fatal to her OADA claim. Prior to the enactment of the GTCA, the State of Oklahoma and all of its agencies (like RUSO and SEOSU), arms, and officials enjoyed common law sovereign immunity from tort liability. The GTCA, passed by the Oklahoma Legislature in response to the Oklahoma Supreme Court's ruling in *Vanderpool v. State*, 672 P.2d 1153 (Okla. 1983), sets forth the

precise extent to which the State is no longer immune. Section 152.1 of the GTCA provides that the State of Oklahoma adopts the doctrine of sovereign immunity, and that the State and all of its constituent parts shall be immune from liability for torts. It also provides the limited circumstances under which the State waives immunity, (only to the extent and manner provided for in the GTCA).[2]

The State's and University Defendants' tort liability are governed exclusively by the GTCA. OKLA. STAT. tit. 51 § 151 *et seq.*; OKLA. STATE tit. 51 § 153(B). In *Fuller v. Odom*, 1987 OK 64, 741 P.2d 449, 452, the Supreme Court of Oklahoma explained that the GTCA is the exclusive remedy against a governmental entity in this State for the recovery of damages for the tortious acts of its employees. (*See also Girdner v. Bd. of Comm'rs*, 2009 OK CIV APP 94, 227 P.3d 1111, 1114. "The GTCA is the exclusive remedy by which an injured plaintiff may recover in tort against a governmental entity in this state.")

The GTCA requires that any person with a purported claim against the State shall present the claim to the State in writing, to certain offices or personnel. The GTCA also requires that a would-be Plaintiff may not file suit against the State or its subdivisions unless the underlying tort claim was timely made, and was denied in whole or in part during

---

[2] A. The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state . . ., whether performing governmental or proprietary functions, shall be immune from liability for torts.

B. The state, only to the extent and in the manner provided in this act, waives its immunity . . .

OKLA. STAT. tit. 51 § 152.1

the administrative process, (either expressly or by operation of law due to the passage of sufficient time). Further, the lawsuit subsequently brought must then be filed within the appropriate timeframe after denial of the claim. (OKLA. STAT. tit. 51 §§ 156 & 157). "No action for any cause arising under this act . . . shall be maintained <u>unless valid notice has been given</u> . . ." OKLA. STAT. 51 § 157(B) (emphasis added). *See also Duncan v. City of Nichols Hills*, 1996 OK 16, ¶¶ 14-15, 913 P.2d 1303, 1307 (citations omitted); and *Shanbour v. Hollingsworth*, 1996 OK 67, ¶ 7, 918 P.2d 73, 75 (Compliance with written notice of claim and provision is prerequisite to state's consent to be sued in GTCA actions and to the exercise of judicial power to remedy alleged tortious wrong by government.) Plaintiff's Lawsuit does not allege that Plaintiff made the requisite written notice of any tort claim to the State Office of Risk Management's Administrator. The Lawsuit does not allege that the tort claim was denied (either expressly or by operation of law), and the Lawsuit does not allege the Complaint was filed within the correct post-denial timeframe.

In *Davis v. Board of Regents for Oklahoma State University*, 2001 OK CIV APP 65, 25 P.3d 308, the Oklahoma Court of Civil Appeals held that a plaintiff's employment law claims were bound by the provision of the GTCA, and his failure to comply with the notice requirement was fatal to his case. *Id.* at 310. Similarly, in *Randolph v. Oklahoma Military Department ex rel. State of Oklahoma*, 1995 OK CIV APP 30, 895 P.2d 736, the court therein dismissed a plaintiff's claim for wrongful termination due to failure to file a notice of tort claim pursuant to the GTCA. *Id.* at 738. More recently, a court in this Federal District found that a plaintiff's failure to comply with the GTCA precluded jurisdiction over OADA claims against a governmental entity. In *Childers v. Bd. of Comm'rs of*

*Oklahoma County*, No. CIV-19-460-F, 2019 WL 3069446, at *5 (W.D. Okla. July 12, 2019), the complaint there included no allegations Plaintiff had complied with the GTCA. Among other things, the Honorable Judge Friot found this fatal to the OADA claim, and that "[t]he GTCA also requires the notice to include very specific information regarding, for example, the amount of compensation or other relief demanded. 51 O.S. § 156(E)." *Id.* Going on, the court found that, "dismissal of the OADA claims is warranted. The OADA claims will be dismissed without prejudice for lack of jurisdiction under Rule 12(b)(1)."

In the case at bar, it is evident from a plain reading of the Complaint that the Lawsuit makes no mention of the GTCA. There are no factual averments about a timely notice of tort claim provided to the State, or that Plaintiff provided information as to the amount of compensation or other relief demanded. The Lawsuit is bereft of any allegation that Plaintiff's tort claim was denied either expressly or by passage of time, and the Lawsuit lacks any allegation that this case was filed within the permitted post-denial time period. Accordingly, Plaintiff's OADA claim must be dismissed, just in like *Childers*, for lack of jurisdiction pursuant to Rule 12(b)(1).

**b. ADA claim**

Disability accommodations in employment are governed by Title I of the ADA. Plaintiffs must exhaust administrative remedies before filing an ADA Title I lawsuit. *See* 42 U.S.C. § 2000e-5(e)(1) (Title VII charges must be filed within 180 days of the alleged unlawful employment practice); 42 U.S.C. § 12117(a) (applying Title VII remedies and

procedures to ADA)[3]. Thus, any would-be ADA plaintiff must file her charge of disability discrimination within three hundred (300) days of the alleged violation. A putative plaintiff's failure to cooperate with the EEOC can constitute a failure to exhaust administrative remedies. *See, e.g., Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304 (10th Cir. 2005).

Here, Plaintiff alleges she filed her EEOC charge "on or around December 19, 2019." [Doc. 1-2, ¶ 15]. Accordingly, any events possibly covered by that charge would had to have happened on or after February 22, 2019. This would <u>exclude</u> all events in 2018 (such as Plaintiff's bowel collapse), and her alleged "discipline" in December of 2018 .The factual averments in this regard are a nullity, and cannot serve to support a cause of action. Further, such claims are void, and must be dismissed for failure to properly exhaust administrative remedies.

## II.     THE UNIVERSITY IS IMMUNE.

### a. OADA claim

The Eleventh Amendment is alive and well. "The history of the adoption and development of the Amendment ... confirms that it is an independent limitation on all exercises of Art. III power: 'the entire judicial power granted by the Constitution does not embrace authority to entertain suit brought by private parties against a State without

---

[3] Oklahoma is a "deferral state," which means that a state agency has authority to investigate employment discrimination; Title VII requires claimants to file a charge of discrimination within 300 days of the alleged unlawful employment practice. OKLA. STAT. tit. 25 § 1502; 42 U.S.C. § 2000e–5(e)(1). *Thuc Tran v. Sonic Indus. Servs., Inc.*, 767 F. Supp. 2d 1217, 1224 fn.1 (W.D. Okla. 2011), aff'd sub nom. *Tran v. Sonic Indus. Servs., Inc.*, 490 F. App'x 115 (10th Cir. 2012)

consent given,'" *Ex parte State of New York No. 1*, 256 U.S. 490, 497, 41 S.Ct. 588, 589 (1921). Simply put, the State of Oklahoma has "not waived its immunity to suit under the OADA." *Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, 693 F.3d 1303, 1305 (10th Cir. 2012) (affirming trial court's holding that Oklahoma has not waived its immunity from suit under the OADA). Because the University (as an arm of the State of Oklahoma) is immune from suit under the OADA, and has not waived that immunity, this claim must be dismissed. Under the GTCA, and the principles of State sovereign immunity, Plaintiff's OADA claim is void. Jurisdiction is absent; State immunity is intact; and this claim must be dismissed.

### b. FMLA claim

Plaintiff purports to bring her Lawsuit (in part) under the FMLA, but the State of Oklahoma retains its sovereign immunity against Plaintiff's FMLA suit. Plaintiff alleges that she sought FMLA protected leave "in September 2018 for her bowel collapse and June 2019 for her hysterectomy." [Doc. 1-2, ¶ 9] Both of these conditions are Plaintiff's, and the care would be for Plaintiff herself. The Supreme Court has explicitly stated that, "the self-care provision [of the FMLA] is not a valid abrogation of the States' immunity from suit." *Coleman v. Court of Appeals of Maryland*, 132 S.Ct. 1327, 1334 (2012).[4] Therefore,

---

[4] Plaintiff also mentions at paragraph 12 of her Complaint that she "requested an accommodation for intermittent leave for her husband's terminal medical condition." [Doc. 1-2]. However, Plaintiff does not allege any factual averments tending to show that she was prohibited from taking such leave, or that such leave served as the basis for any adverse action at all.

the State's Eleventh Amendment immunity is intact, this Court lacks jurisdiction to hear this claim against SEOSU, and this claim should be dismissed.

### c. ADA claim

This claim is also subject to Oklahoma's Eleventh Amendment immunity. Although the Lawsuit does not attempt to specify one way or the other, Plaintiff presumably seeks to bring her claim pursuant to Title I of the ADA, as that is the title dealing with accommodation in **employment**. The Tenth Circuit has held that claims of employment discrimination under the ADA must be brought under Title I of that Act. *Elwell v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1309 (10th Cir. 2012). But when the employer is a state or state entity, (such as Oklahoma or its public education institutions), the claim is barred, due to sovereign immunity. As the United States Court of Appeals for the Tenth Circuit put it:

> Congress has not effectively abrogated immunity for ADA **employment** claims. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); *Elwell v. Okla. ex rel. Bd. of Regents*, 693 F.3d 1303, 1309-10 (10th Cir. 2012). And Oklahoma has retained its sovereign immunity.

*See* OKLA. STAT. tit. 51 § 152.1. *Bright v. Univ. of Oklahoma Bd. of Regents*, 705 F.App'x 768, 769 (10th Cir. 2017) (Emphasis added.)

Since Congress has not abrogated Oklahoma's immunity against Title I ADA employment claims, and Oklahoma "has retained its sovereign immunity" against such claims, Plaintiff's ADA employment claim is a nullity, and the Court must dismiss it.

## III.   THE LAWSUIT LACKS SUFFICIENT FACTUAL AVERMENTS.

Plaintiff's Lawsuit should be dismissed pursuant to Rule 12(b)(6) for its failure to provide sufficient factual allegations in support of its conclusory statements. The Lawsuit's threadbare recitals do not nudge any of her claims across the line of plausibility, as set forth more fully as follows:

### a. ADA claim

Plaintiff purports to predicate her Lawsuit in part on the notion of disability discrimination. But Plaintiff's factual averments in this regard fall short. To begin with, Plaintiff's Lawsuit never actually describes a disability. The word "disability" appears only twice in the entire Complaint (both in the second sentence of paragraph 12), but Plaintiff offers no factual allegations as to what her purported disability is. Nor does Plaintiff bother to allege (even in a threadbare or conclusory fashion) that she is a qualified individual under the ADA.

"To sustain [an employment-discrimination] claim under the ADA, [the plaintiff] must show that [s]he (1) was disabled; (2) was qualified ..., and (3) suffered adverse employment action because of the disability." *Rivero v. Bd. of Regents of Univ. of New Mexico*, 950 F.3d 754, 760 (10th Cir. 2020) (*quoting Mathews v. Denver Post*, 263 F.3d 1164, 1167 (10th Cir. 2001). Plaintiff has shown none of these three things. No factual averments demonstrate Plaintiff's alleged disability, nor do any factual averments show a causal relationship between the phantasmal disability and any adverse employment action. While the Complaint does allege, one time, that "in April 2019 Plaintiff was given an above-average performance evaluation" [Doc. 1-2, ¶ 11], the Complaint makes no mention

of her overall qualifications for her job, or (more importantly) what her job performance was in October 2019 at the time of her termination. In short, Plaintiff's factual averments fall short of the *Twombly/Iqbal* standard, and her Complaint must be dismissed.

### b. FMLA

To be eligible for FMLA leave, an employee must have been "employed for at least 1,250 hours of service during the 12–month period immediately preceding the commencement of the leave...." 29 C.F.R. § 825.110(a)(2). Plaintiff makes no factual allegation demonstrating her qualification in this regard, or that she had any remaining FMLA-covered days still available to her. Thus, Plaintiff's Complaint fails to provide sufficient minimum factual allegations about her qualification to take FMLA leave, and dismissal is warranted.

Even assuming, *arguendo*, Plaintiff had alleged facts showing her entitlement to the FMLA leave she took, Plaintiff alleges merely in conclusory fashion that, Defendants subjected Plaintiff to retaliation, including termination and discipline, "for her opposing unlawful discrimination in violation of the ADA, OADA, and FMLA" and "for exercising her rights under ADA, OADA and FMLA." [Doc. 1-2, ¶¶ 16 and17] Plaintiff also summarily claims, "Defendants interfered with her ability to exercise her rights under the FMLA." *Id*. at ¶ 18. But Plaintiff offers little in the way of supporting factual allegations for any of these assertions.

An interference claim under the FMLA requires plaintiff to show: "(1) that [s]he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with h[er] right to take FMLA leave, and (3) that the employer's action was related to the

exercise or attempted exercise of h[er] FMLA rights." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (alteration in original) (*quoting Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005)); *see also* 29 U.S.C. § 2615(a)(1) (prohibiting interference with FMLA rights). Timing is important when evaluating a plaintiff's FMLA claims. Under an interference claim, plaintiff "must show that she was prevented from taking the full 12 weeks' of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Id.* (*citing Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1181 (10th Cir. 2006). It arises "when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave." *Dalpiaz v. Carbon Cnty., Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014). In contrast, a retaliation claim arises when, after successfully taking FMLA leave, the employee returns to work and suffers adverse employment consequences "post-dating her return to work." *Id.* at 1287-88. "To establish a prima facie FMLA retaliation claim, a plaintiff must show that (1) she availed herself of a protected right under the FMLA, (2) an employment decision adversely affected her, and (3) a causal connection between the two actions exists." *Murray v. Walgreens Co.*, No. CIV-05-1125-M, 2006 WL 1049623, at *2 (W.D. Okla. Apr. 14, 2006) (*quoting Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1104 (10th Cir.2005).

With regard to Plaintiff's interference claim, she does not allege that she was prevented from taking any leave she sought. Plaintiff does offer one lone allegation that when she "request[ed] leave for her June 2019 hysterectomy, Defendants informed Plaintiff that she was not able to take leave, despite actually being eligible for medical

~ 14 ~

leave." [Doc. 1-2, ¶ 10]. Plaintiff offers no factual allegations showing she was actually eligible, but even if she had, she <u>concedes in the same paragraph that Defendants approved her leave, and did so in advance</u>. Defendants submit that this is not enough to maintain a claim for FMLA interference. Whether Defendants' purported communication to Plaintiff was, for example, that she did not have enough leave to take leave with pay, or that she had already taken twelve weeks' worth of FMLA-protected leave that year, or whatever else, the fact remains she was allowed to take leave. Thus, her interference claim fails.

As to Plaintiff's retaliation claim, she alleges she was "disciplined for her previously approved medical absences in her December 2018 performance evaluation." [Doc. 1-2, ¶ 9]. As noted, above herein, such a claim is too old to serve as the basis for a viable FMLA retaliation claim as Plaintiff's charge with the EEOC was not filed timely thereafter. Thus, this claim must be dismissed to the extent it relies on these events. Plaintiff does also allege that she took FMLA leave in July of 2019, and that she took intermittent leave (apparently in September 2019, as stated in [Doc. 1-2, ¶ 12]),[5] followed by her termination in October 2019. But, she concedes that termination in October was preceded by a recommendation for her termination some two months earlier in August of 2019. But Plaintiff has not alleged any facts showing a causal relationship between her multiple uses of FMLA-protected leave and her ultimate termination. Plaintiff's Complaint fails to meet the 12(b)(6) standard, and must be dismissed.

---

[5] The date of this leave is not specified in Plaintiff's Complaint.

### c. OADA

The OADA prohibits employers from discharging or otherwise discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment on the basis of race, color, religion, sex, national origin, age, genetic information or disability. OKLA. STAT. tit. 25 §§ 1302(A)(1), 1301(4). Here, Plaintiff only raises the spectre of possible disability discrimination. *See* [Doc. 1-2, generally]. As a precondition to suit, "the OADA requires a plaintiff to file a charge of discrimination" either with the EEOC or the Oklahoma Attorney General's Office "within 180 days from the last date of the alleged discrimination." *Tolbert v. Ean Servs., LLC*, No. 15-CV-735-GKF-TLW, 2016 WL 796096, at *3 (N.D. Okla. Feb. 26, 2016) (citing OKLA. STAT. tit. 25 § 1350(B)). That requirement is jurisdictional. *See id.* (*citing Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2004)). "[T]he timely filing of a charge is required '[i]n order to have standing in a court of law to allege discrimination arising from an employment-related matter.' " *Id.* (quoting OKLA. STAT. tit. 25 § 1350(B)). Further, to the extent there may be an extension for federal claims due to possible work-sharing agreements between federal and Oklahoma state offices, such would be unavailing as to any OADA claims. To wit, "a timely federal filing cannot remedially extend a state-law statute of limitations." *Johnson v. Wal-Mart Stores E.*, LP, No. 17-CV-341-GKF-FHM, 2017 WL 3586710, at *2 (N.D. Okla. Aug. 18, 2017) (*citing Forcum v. Via Christi Health System, Inc.*, 137 P.3d 1250, 1253 (Okla. Civ. App. 2006). Plaintiff fails to plead factual averments demonstrating a timely-raised right to recovery under the OADA. Thus, dismissal is appropriate.

~ 16 ~

Further, Plaintiff generally fails to allege sufficient facts showing a right to recovery under the OADA. As noted, above, Plaintiff offers no factual averments showing a disability. There is no allegation the University Defendants regarded or treated Plaintiff as a disabled person. Thus, just as with Plaintiff's putative ADA claim, "disability" cannot serve as the basis for any claim under the OADA. Plaintiff's OADA-based claim is, in fact, baseless, and must be dismissed.

## CONCLUSION

Plaintiff's Lawsuit fails to state a claim, and fails to confer jurisdiction. Plaintiff's Lawsuit should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), as outlined herein. Defendants RUSO and SEOSU ask this Court grant dismissal of all claims, and for such other relief as the Court deems just and appropriate.

Respectfully submitted,

/s/ Jeb Joseph
**DIXIE L. COFFEY, OBA#11876**
**JEB E. JOSEPH, OBA#19137**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:   405.521.3921
Facsimile:     405.521.4518
Email: dixie.coffey@oag.ok.gov
          jeb.joseph@oag.ok.gov
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on this 31st day of August 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further certify that a true and correct copy of the foregoing document was sent via the ECF System to the following persons who are registered participants:

D. Colby Addison
Leah Roper
1133 N. Portland Ave.
Oklahoma City, OK 73107
*Attorneys for Plaintiff*

                    /s/Jeb Joseph
                    Jeb Joseph