## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KRISTA RAMIREZ,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No. CIV-20-845-G** |
| | ) |
| **STATE OF OKLAHOMA ex rel.** | ) |
| **BOARD OF REGENTS FOR THE** | ) |
| **REGIONAL UNIVERSITY SYSTEM** | ) |
| **OF OKLAHOMA, et al.,** | ) |
| | ) |
|     **Defendants.** | ) |

## <u>ORDER</u>

Plaintiff Krista Ramirez has brought this lawsuit against Defendant State of Oklahoma *ex rel.* Board of Regents for the Regional University System of Oklahoma and Defendant Southeastern Oklahoma State University ("SEOSU"), alleging violations of Plaintiff's federal and state statutory rights arising from her employment. *See* Am. Compl. (Doc. No. 8). Now before the Court is the Motion to Dismiss (Doc. No. 10) jointly filed by Defendants. Plaintiff has responded (Doc. No. 11) and Defendants have replied (Doc. No. 12).

I.    *Summary of the Pleadings*

In her Amended Complaint, Plaintiff alleges that Defendants violated her rights in connection with her employment (presumably at SEOSU, although the location is not specified). Specifically, Plaintiff asserts that she was employed by Defendants from approximately September 16, 2013, to October 10, 2019, as an instructional designer. Am. Compl. ¶¶ 7-8. According to Plaintiff, she met all requirements to perform this job and

"could perform the essential functions of her position with or without reasonable accommodation." *Id.* ¶ 8.

Plaintiff alleges that she suffered from a bowel collapse in the Fall of 2018 and also was diagnosed with endometriosis with a subsequent hysterectomy in June 2019. *See id.* ¶¶ 9-10. Plaintiff states she informed Defendants of these "serious health conditions that required her to take leave from work." *Id.* ¶ 10. Plaintiff states she also informed Defendants in February 2019 that her husband was diagnosed with "a terminal disease, Autosomal Dominant Polycystic Kidney Disease." *Id.*

Regarding Plaintiff's bowel collapse, Plaintiff alleges that she "was required to take protected leave under the FMLA in September 2018" and that after she took this leave, she "was disciplined for her previously approved medical absences in her December 2018 performance evaluation." *Id.* ¶ 11. Plaintiff "complained about this discriminatory and retaliatory treatment." *Id.*

With respect to her hysterectomy, Plaintiff alleges that when she requested leave for the June 2019 surgery, "Defendants informed Plaintiff that she would not be able to take leave, despite [her] actually being eligible for medical leave." *Id.* ¶ 12. After Plaintiff "insist[ed] on the medical necessity," "Defendants ultimately approved her leave for her hysterectomy." *Id.* "This resulted in Plaintiff being off work for approximately five weeks until July 22, 2019." *Id.*

Plaintiff alleges that, despite being given "an above-average performance review" in April 2019, in August of that year she received "a counseling report recommending her termination within thirty (30) days." *Id.* ¶ 13. In September 2019, Plaintiff (1) requested

accommodations for anxiety caused by her "hostile work environment"; (2) requested intermittent leave due to her husband's terminal medical condition; and (3) "complained to Defendants of discrimination related to her disability and her husband's disability." *Id.* ¶ 14.  On or about October 10, 2019, Defendants terminated Plaintiff's employment. *Id.* ¶ 15.

Plaintiff alleges that she has suffered wage loss and emotional distress/dignitary harm damages as a result of Defendants' actions. *See id.* ¶ 16.  Plaintiff alleges that Defendants subjected Plaintiff to improper discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"),[1] the Rehabilitation Act,[2] the Family and Medical Leave Act ("FMLA"),[3] and the Oklahoma Anti-Discrimination Act ("OADA").[4] *See id.* ¶¶ 19-20.  Plaintiff also contends that "Defendants interfered with [her] ability to exercise her rights under the FMLA." *Id.* ¶ 21.  In this lawsuit, Plaintiff seeks "actual, compensatory, and liquidated damages." *Id.* at 6.

## II.  *Applicable Standards*

Defendants assert that Plaintiff's allegations reflect that the Court lacks subject-matter jurisdiction to hear certain of Plaintiff's claims and, therefore, such claims should

---

[1] Title I of the ADA prohibits discrimination "on the basis of disability"  against qualified individuals by employers and their agents.  42 U.S.C. § 12112(a); *see id.* §§ 12111-12117.

[2] Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits discrimination by reason of disability "under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

[3] 29 U.S.C. §§ 2601 et seq.

[4] Okla. Stat. tit. 25, §§ 1101, 1301-1350.

be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See* Fed. R. Civ. P. 12(b)(1).  "A facial attack on the complaint's allegations regarding subject matter jurisdiction questions the complaint's sufficiency and requires the court to accept the allegations as true." *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009); *see also E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1302-03 (10th Cir. 2001).  As the party asserting federal jurisdiction, Plaintiff bears "the burden of alleging the facts essential to show jurisdiction." *U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002) (internal quotation marks omitted).

Defendants also seek dismissal of certain claims for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).  A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citation omitted); *see Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face." (internal quotation marks omitted)).  Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be

supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

III.    *Defendants' Motion to Dismiss*

In their Motion, Defendants argue that Plaintiff failed to exhaust her administrative remedies on the ADA claim, that the Court lacks subject-matter jurisdiction over the ADA and OADA claims and over Plaintiff's FMLA self-care claim regarding Plaintiff's own medical issues, and that Plaintiff has failed to state a claim upon which relief can be granted as to all asserted claims. *See* Defs.' Mot. at 5-13; Defs.' Reply at 5-6.

In her Response, Plaintiff affirmatively "withdraw[s]" her ADA claim and her FMLA self-care claim.  Pl.'s Resp. at 1 ("Plaintiff . . . concedes that dismissal is appropriate.").  Accordingly, the Court addresses only Defendants' request for dismissal of the remaining claims.

A. *Plaintiff's OADA Claim*

The OADA "provides for exclusive remedies within the state of the policies for individuals alleging discrimination in employment on the basis of . . . disability."  Okla. Stat. tit. 25, § 1101(A); *see also id.* § 1302.  Citing Oklahoma's assertion of sovereign immunity in the Oklahoma Governmental Tort Claims Act ("OGTCA," Okla. Stat. tit. 51, §§ 151 et seq.), Defendants contend that they are immune from suit in federal court on claims asserted under the OADA.  *See* Defs.' Mot. at 6; Defs.' Reply at 5; Okla. Stat. tit. 51, § 152.1(A) ("The State of Oklahoma does hereby adopt the doctrine of sovereign immunity.  The state, its political subdivisions, and all of their employees acting within the scope of their employment . . . shall be immune from liability for torts.").  Thus, Defendants

argue that this Court lacks jurisdiction to hear Plaintiff's OADA claim and it must be dismissed pursuant to Rule 12(b)(1).[5]

Plaintiff responds that the invocation of sovereign immunity in the OGTCA does not extend to OADA claims. *See* Pl.'s Resp. at 9. As support, Plaintiff cites *Bruehl v. Oklahoma ex rel. Oklahoma Indigent Defense System*, No. CIV-13-1247-HE, 2014 WL 2879744, at *2-4 (W.D. Okla. June 24, 2014), in which Judge Heaton held that, per binding authority of the Oklahoma Supreme Court, an OADA claim is not a "tort" subject to and within the scope of the OGTCA and, therefore, the assertion of sovereign immunity in that Act did not extend to OADA claims. *Accord Cooper v. City of Alva*, No. CIV-19-148-G, 2019 WL 5653217, at *3 (W.D. Okla. Oct. 31, 2019); *Hall v. Okla. Dep't of Rehab. Servs.*, No. CIV-17-497-D, 2018 WL 991543, at *7 n.8 (W.D. Okla. Feb. 20, 2018) ("OADA claims are not 'torts' within the meaning of the OGTCA, and are not subject to its provisions.").

Defendants counter that the underpinnings of *Bruehl* are no longer solid, noting that the OGTCA was amended such that its definition of "tort" includes not just "a legal wrong, independent of contract, involving violation of a duty imposed by general law or otherwise" but one "involving violation of a duty imposed by general law, *statute, the*

---

[5] Defendants also invoke the Eleventh Amendment as immunizing them from suit in federal court on claims asserted under the OADA. *See* Defs.' Mot. at 6 (citing *Elwell v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1305, 1314-16 (10th Cir. 2012), in which the Tenth Circuit affirmed dismissal of an OADA claim based on a finding that Oklahoma had not waived its Eleventh Amendment immunity from suit under the OADA). But Defendants' Eleventh Amendment immunity was waived by their removal of this suit from state court. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 616 (2002).

*Constitution of the State of Oklahoma,* or otherwise." *See* Defs.' Reply at 5 (emphasis omitted and added). *Compare* Okla. Stat. tit. 51, § 152(14) (eff. Nov. 1, 2010), *with* Okla. Stat. tit. 51, § 152(14) (eff. Apr. 21, 2014).

Defendants fail to note, however, that Judge Heaton in *Bruehl* expressly cited the same version of OGTCA section 152(14) as relied on by Defendants, as the relevant amendment was enacted in 2014, several months before *Bruehl* was issued. *See Bruehl*, 2014 WL 2879744, at *3 n.2 (citing Okla. Stat. tit. 51, § 152(14) (eff. Apr. 21, 2014) (defining a "tort" as "a legal wrong, independent of contract, involving violation of a duty imposed by general law, statute, the Constitution of the State of Oklahoma, or otherwise . . . ")). Defendants also fail to cite any Oklahoma state-court authority superseding the interpretation of the OGTCA that Judge Heaton found to be binding.

Having considered the reasoning in *Bruehl*, and having had no proper basis presented to distinguish the instant matter, the Court likewise finds that "[P]laintiff's state law claim under the OADA is not barred by the doctrine of immunity from liability." *Id.* at *4.

### B. *Plaintiff's FMLA Claim Regarding Her Husband's Condition*

Defendants next challenge, pursuant to Rule 12(b)(6), Plaintiff's claim under the FMLA for interference with her right to take leave as a result of her husband's medical condition and for retaliation against her for exercising that right.

The FMLA "entitles eligible employees to take up to 12 work weeks of unpaid leave per year." *Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30, 34 (2012). Relevant here, 29 U.S.C. § 2612 allows an employee to take leave "to care for the spouse . . . of the employee,

if such spouse . . . has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). Plaintiff asserts that Defendants (1) interfered with her rights under this provision and (2) retaliated against her for exercising those rights. *See* Am. Compl. ¶¶ 19-21; *see Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007); 29 U.S.C. § 2615(a)(1), (a)(2).

In the Amended Complaint, Plaintiff alleges in relevant part that she informed Defendants of her husband's terminal medical condition in February 2019. *See* Am. Compl. ¶ 10. In August 2019, she "was given a counseling report recommending her termination within thirty (30) days." *Id.* ¶ 13. In September 2019, Plaintiff requested "intermittent leave" due to her husband's condition. *Id.* ¶ 14. In September 2019, Plaintiff also "complained to Defendants of discrimination related to her disability and her husband's disability." *Id.* ¶ 14. On or about October 10, 2019, Plaintiff's employment was terminated. *Id.* ¶ 15; *see also* Pl.'s Resp. at 10.

### 1. Interference Claim

To establish an interference claim, Plaintiff must show: "(1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights." *Campbell*, 478 F.3d at 1287 (alterations and internal quotation marks omitted). Regarding the second element, Plaintiff "must show that she was prevented from taking the full 12 weeks[] of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Id.*

Defendants argue that Plaintiff does not adequately allege the second element as to her request for leave to care for her husband. *See* Defs.' Mot. at 9-10, 11. In regard to her

husband's condition, there is no allegation that Defendants prevented Plaintiff from taking her guaranteed leave, denied reinstatement following leave, or initially denied her permission to take leave. Plaintiff's unsupported assertion of interference is insufficient to push her claim over the line to "plausibility of entitlement of relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (explaining that the pleading's factual content must show "more than a sheer possibility that a defendant has acted unlawfully"). The Court agrees that, insofar as this claim, the pleading fails to state a claim upon which relief can be granted. *See Campbell*, 478 F.3d at 1287; Fed. R. Civ. P. 12(b)(6).

### 2. *Retaliation Claim*

To prevail upon an FMLA retaliation claim, Plaintiff must prove that: "(1) she engaged in a protected activity; (2) [Defendants] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Campbell*, 487 F.3d at 1287 (internal quotation marks omitted); *see also id.* at 1287-88 ("[A] retaliation claim may be brought when the employee successfully took FMLA leave, was restored to her prior employment status, and was adversely affected by an employment action based on incidents post-dating her return to work.").

Relevant to the first element, Plaintiff alleges that in September 2019 she requested intermittent leave based upon her husband's condition. The pleading does not establish whether Plaintiff actually took such leave, but the Tenth Circuit has treated an employee's "invok[ing]" of FMLA rights by "request[ing] . . . FMLA-protected leave" as the requisite protected activity. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171-72

(10th Cir. 2006); *accord Coleman v. Blue Cross Blue Shield of Kan.*, 487 F. Supp. 2d 1225, 1247-48 (D. Kan. 2007) (considering whether a causal connection existed between the plaintiff's request of FMLA leave and her termination).   Next, Plaintiff alleges that she was terminated on or about October 10, 2019.   This allegation plausibly establishes the second element, as "any reasonable employee would have found termination materially adverse." *Metzler*, 464 F.3d at 1171.

    Plaintiff's pleading primarily sets forth conclusions, not facts, to support a "causal connection" between this protected activity and her termination.   *See* Am. Compl. ¶¶ 19, 20.   An FMLA plaintiff can establish causation, however, by showing that her termination was "'very closely connected in time' to her protected FMLA activity."   *Metzler*, 464 F.3d at 1172 (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)) (finding that the plaintiff had established a causal connection when her termination occurred at most six weeks after the defendants were aware of the plaintiff's intent to engage in protected activity and four weeks at most from the plaintiff's requesting leave); *accord O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (noting that a one-and-a-half month time period between the protected activity and the adverse action may be enough to establish causation on retaliation claims, but that a period of three months, without additional evidence, has been found insufficient to do so).

    As set forth above, Plaintiff alleges that she was fired approximately ten days to five weeks after requesting leave.   That allegation, accepted as true, places Plaintiff's termination sufficiently close in time to her request for intermittent leave as to plausibly establish a causal connection between the two events.   *See Metzler*, 464 F.3d at 1172;

*Burnett*, 706 F.3d at 1235.  Dismissal of Plaintiff's FMLA retaliation claim therefore is not warranted.  *See* Fed. R. Civ. P. 12(b)(6).

### C.  *Plaintiff's Rehabilitation Act Claim*

Defendants also argue, pursuant to Rule 12(b)(6), that Plaintiff fails to state a plausible claim for violation of the Rehabilitation Act.  "The Rehabilitation Act prohibits discrimination against an 'otherwise qualified individual with a disability.'"  *McGeshick v. Principi*, 357 F.3d 1146, 1149 (10th Cir. 2004) (quoting 29 U.S.C. § 794(a))).  "The statute makes available a private right of action to qualified individuals who have been subjected to discrimination . . . by a program or activity receiving federal financial assistance."  *Id.* To state a discrimination claim under the Rehabilitation Act, Plaintiff must plausibly allege that: (1) she is an "individual with a disability"; (2) she would be "otherwise qualified" to participate in the relevant program or activity; (3) the program or activity receives federal financial assistance; and (4) the program or activity has excluded, denied benefits to, or discriminated against Plaintiff "solely by reason of" her disability.  *See id.* at 1150; 29 U.S.C. § 794(a), (b).[6]

Defendants dispute whether Plaintiff has adequately alleged that she was disabled.  *See* Defs.' Mot. at 12-13; Defs.' Reply at 7-9.  The ADA and the Rehabilitation Act define "disability" in "essentially the same terms."  *Nielson v. Moroni Feed Co.*, 162 F.3d 604,

---

[6] In her Response, Plaintiff also refers to her allegations regarding her husband's kidney disease as supportive of Plaintiff's Rehabilitation Act claim.  Plaintiff, however, offers no authority for the proposition that the private right of action authorized by this Act extends to discrimination against a person by reason of another's disability or the need to care for another.

608 n.7 (10th Cir. 1998). And because the Rehabilitation Act incorporates the ADA's standards, *see* 29 U.S.C. § 705(9)(B), the result is an expanded understanding of "disabled" under both statutes:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment . . . .

*McGeshick*, 357 F.3d at 1150 (quoting 42 U.S.C. § 12102(1)). "To satisfy this definition, 'a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011) (internal quotation marks omitted). Such an impairment includes: "[a]ny physiological disorder or condition . . . or anatomical loss affecting one or more body systems," including "reproductive, digestive," or "genitourinary," or "[a]ny mental or psychological disorder, such as . . . emotional or mental illness." 29 C.F.R. § 1630.2(h); *see Carter*, 662 F.3d at 1142; *see also Bragdon v. Abbott*, 524 U.S. 624, 632 (1998).

Plaintiff alleges that she suffers from anxiety and endometriosis, that she suffered a bowel collapse, and that she underwent a hysterectomy. *See* Pl.'s Resp. at 5 (citing Am. Compl. ¶¶ 9, 10, 11, 14). As to anxiety disorder, Defendants argue that the anxiety described by Plaintiff is merely "situational" and therefore does not support a finding of disability. Although Defendants cite a decision in which the Tenth Circuit affirmed a finding that the anxiety a student experienced "limited to certain academic subjects" did not constitute a disability, that holding focused upon the particular student's failure to show

that his anxiety disorder substantially limited a major life activity. *See McGuinness v. Univ. of N.M. Sch. of Med.*, 170 F.3d 974, 977-78 (10th Cir. 1998). The *McGuinness* decision does not contradict the extensive authority deciding that an anxiety disorder may constitute a recognized impairment supporting a showing of disability under the Rehabilitation Act. *See, e.g.*, *Mayfield v. Target Corp.*, No. 5:18-cv-04036-HLT, 2019 WL 5576938, at *3 (D. Kan. Oct. 29, 2019) (noting the plaintiff's "recognized impairment of generalized anxiety disorder"); *Stuart v. Vilsack*, No. 2:14-CV-416-SMJ, 2016 WL 6902347, at *6 (E.D. Wash. Nov. 23, 2016) (finding that the plaintiff's PTSD-related anxiety was a recognized impairment for a Rehabilitation Act claim); *see also* E.E.O.C., *EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities*, 1997 WL 34622315, at *2 (Mar. 25, 1997) (identifying anxiety disorders as an example of emotional or mental illness included within the ADA's mental impairments); 28 C.F.R. § 35.108(b)(2) (prescribing that "[p]hysical or mental impairment" includes "emotional illness"). The Court reads Plaintiff's allegations of anxiety as plausibly describing an impairment that falls within this general category and, at this point, not one excludable under the limited scope of the *McGuinness* decision.

As to Plaintiff's endometriosis, bowel collapse, and hysterectomy, Defendants in their Motion at least nominally question whether Plaintiff has alleged a recognized impairment. *See* Defs.' Mot. at 13 ("Plaintiff points to no disability."). Plaintiff's reference to her endometriosis—and what appears to be the related event of a hysterectomy procedure—adequately alleges a physiological condition "affecting one or more body systems." 29 C.F.R. § 1630.2(h); *see also Bragdon*, 524 U.S. at 660 (Rehnquist, C.J.,

concurring in part and dissenting in part) ("There are numerous disorders of the reproductive system, such as . . . endometriosis, which are so painful that they limit a woman's ability to engage in major life activities . . . ."); 42 U.S.C. § 12102(4)(A) ("The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter."). Accordingly, Plaintiff has adequately alleged one or more recognized impairments to establish the disability element of her Rehabilitation Act claim.

Defendants also argue that Plaintiff's allegations fail to establish causation—i.e., that Defendants discriminated against Plaintiff "solely by reason of" her disability. 29 U.S.C. § 794(a); *see McGeshick*, 357 F.3d at 1150; Defs.' Mot. at 13. As to Plaintiff's anxiety disorder, the very close temporal proximity between Plaintiff bringing that impairment to Defendants' attention and Defendants' termination of Plaintiff is sufficient at this pleading stage to plausibly support a causal connection between the two events. *See* Am. Compl. ¶¶ 14, 15 (alleging that Plaintiff requested accommodations for anxiety in September 2019 and was terminated on or about October 10, 2019); *Anderson*, 181 F.3d at 1179. And, while some events related to Plaintiff's endometriosis were more distant in time from the October 2019 termination of Plaintiff, the fact that Plaintiff allegedly "complained to Defendants of discrimination related to her disability" as late as September 2019, Am. Compl. ¶ 14, is sufficient at this stage to plausibly support a causal connection between the impairment and her termination. *See Arbogast v. Kan. Dep't of Labor*, No. 13-CV-4007-JAR/KMH, 2014 WL 1308915, at *6 (D. Kan. Mar. 31, 2014) (denying

dismissal of Rehabilitation Act claim where the plaintiff complained through July 2011 and was terminated in August 2011).

Plaintiff therefore shall be permitted to proceed with her Rehabilitation Act discrimination claim.

IV.     *Plaintiff's Request to Amend*

As referenced above, Defendants requested dismissal of Plaintiff's FMLA self-care claim based upon the State's immunity to this claim.  *See Coleman*, 566 U.S. at 37 ("[T]he [FMLA's] self-care provision is not a valid abrogation of the States' immunity from suit."). Plaintiff conceded that dismissal of her FMLA self-care claim was proper, *see* Pl.'s Resp. at 1.  In her Response, however, Plaintiff requests that the Court grant her leave to amend her pleading a second time in lieu of dismissal.  *See id.* at 10-11.  In support, Plaintiff cites *Cornforth v. University of Oklahoma Board of Regents*, 263 F.3d 1129 (10th Cir. 2001), in which the Tenth Circuit rejected a state employee's argument that damages claims raised against the employee in his individual capacity were barred by the Eleventh Amendment. *See id.* at 1133.

Plaintiff states that she wishes to amend her claim to "include individual defendants" but fails to identify any such individuals, to identify any factual allegations relevant to these individuals, or to otherwise adequately inform the Court how bringing these unknown individuals into the lawsuit would be in the interest of justice.  Pl.'s Resp. at 10-11; *see* Fed. R. Civ. P. 15(a)(2).  Accordingly, this request is denied.  *Cf.* LCvR 15.1 (requiring that proposed pleading be submitted with motion to amend).

15

CONCLUSION

For the reasons outlined above, Defendants' Motion to Dismiss (Doc. No. 10) is GRANTED IN PART and DENIED IN PART.  Plaintiff's ADA claim, FMLA self-care claim, and FMLA interference claim with regard to her husband are dismissed without prejudice.  Plaintiff's Rehabilitation Act claim, FMLA retaliation claim with regard to her husband, and OADA claim shall be allowed to proceed.

IT IS SO ORDERED this 8th day of January, 2021.

CHARLES B. GOODWIN
United States District Judge